## BURKE v. INTERNATIONAL PAPER CO.

(Supreme Court, Appellate Division, Third Department.   November 11, 1908.)

1. MASTER AND SERVANT (§ 265*) — INJURY TO EMPLOYÉ — NEGLIGENCE—BUR-
DEN.

   The burden is on an employé, suing for injury, to show the employer's
negligence.

   [Ed. Note.—For other cases, see Master and Servant. Cent. Dig. § 895;
Dec. Dig. § 265.*]

2. MASTER AND SERVANT (§ 265*) — INJURY TO EMPLOYÉ — NEGLIGENCE—EVI-
DENCE.

   That an employé was injured through his fingers getting caught in a
pulp press does not show negligence of his employer.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 898;
Dec. Dig. § 265.*]

3. MASTER AND SERVANT (§ 101*)—APPLIANCES—EMPLOYER'S DUTY.

   An employer need not furnish the best possible appliances, or ones in
perfect working condition; it being sufficient that they be reasonably safe
and suitable.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 181;
Dec. Dig. § 101.*]

4. MASTER AND SERVANT (§ 278*) — INJURY TO SERVANT — NEGLIGENCE—EVI-
DENCE—SUFFICIENCY.

   Evidence in an action for injury to an employé, whose fingers were
caught in a pulp press, held insufficient to show that the press was neg-
ligently defective.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
958–968; Dec. Dig. § 278.*]

Appeal from Trial Term, Saratoga County.

Action by Thomas Burke against the International Paper Com-
pany. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, KELLOGG,
COCHRANE, and SEWELL, JJ.

L. B. McKelvey, for appellant.
Erskine C. Rogers, for respondent.

SEWELL, J. This action was brought to recover damages sustain-
ed by the plaintiff through the alleged negligence of the defendant.
The plaintiff was injured while working in the defendant's paper mill
at a machine known as a "pulp press," which consisted, among other
things, of two steel rollers 6 feet long and 2 feet in diameter, one di-
rectly above the other and about one-eighth of an inch apart. Be-
neath the rollers was a vat or tub filled with pulp and water. An
endless belt of felt, 28 feet long and of the same width as the rollers,
passed through the vat and between the rollers. When the machine
was in operation the fine particles of pulp would cling to the felt, and
were carried between the rollers, where the water was squeezed out
and the pulp gathered on the surface of the upper roller. When the
accumulation was half an inch thick the operator, with a wooden pin
18 inches long and an inch in diameter, sharpened at one end like a
pencil, cut it off. Sometimes the pulp would not adhere to the sur-
face of the roller, and it was necessary to reach over the upper roller

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and scratch the surface of the felt with the pin. At one end of the press was ·a friction clutch, which consisted of two iron disks, one of which was attached to the machine and the other to the driving shaft. The machine was operated by bringing the two disks together with considerable pressure by means of a lever. There were several machines in the room of the same kind and used for the same purpose. The clutch was not provided as a protection to employés, but as a means of stopping one machine while the others were running. The disks at times became hot and welded together, so that the lever would not separate them. On such occasions it was necessary to strike them with a hammer or some other instrument.

From February 1st to April 27th, the day of the accident, the plaintiff had worked at one of these presses, and during the last six weeks had had the experience of operating this particular machine. He was familiar with its construction, and the operation of the clutch. He knew that the disks would frequently become heated and bound together, and that "they had to use a hammer to stop." He testified that the accident happened in this way: That he reached over the top roller to scratch the felt, and dropped the pin, "and it came down the small end first, and I made a grab for it; thought I could get it before it got under the roll, and it got under the roll and held my fingers. I tried to yank them out and hallooed to Pitkins, and he reached and grabbed the lever to stop it, and could not do it, and then ran for a hammer." He also testified that:

"About the time I got hold of it, the end of it had reached the rolls. It had traveled maybe two feet. If I had not reached for it, I probably would not have been caught."

Pitkin testified:

"I was standing in front of the table press when he was caught. This was about five feet from the handle of the friction clutch, on the opposite side of the press. I heard the shouting, and tried to shut off the clutch, by putting my hand on the lever of the clutch. I tried to move it, but it did not work. I pulled on it, but was unable to move it. I then went to the cupboard for a hammer, and could not get a hammer, and took a wrench to strike the friction out with the wrench, and got it out when I struck it with the wrench."

It appeared by the evidence that this form of clutch was a proper device and was in general use. It did not appear that there was any other kind of clutch in use, or that there was any other or better or safer means for starting or stopping a machine of this character. It was not claimed that the clutch was broken at the time of the accident. There was evidence, it is true, that the four presses had been in use for several years and that all the clutches "were worn more or less"; but no evidence was given which tended to show that the use or wear caused the disks to heat or bind, that it made the clutches more difficult to operate, or that the clutch in question was less safe than a new one would have been. It did not appear that a clutch had ever been made which would not heat and bind and could be operated by a lever upon all occasions.

The burden of showing that the defendant was negligent rested upon the plaintiff. To sustain the burden it was not enough to prove that an accident happened, or that witnesses testified:

"If the friction is in perfect working condition and in good repair, you can stop the machine instantly. * * * If parts of the machine are in perfect order and good repair, the machine stops instantly, practically. * * * It is not necessary to use a hammer to turn that clutch out when the machine is in perfect working order, and, if it becomes necessary to hammer it, it indicates that the machine is out of order."

There is no rule requiring a master to furnish the best possible appliances or one in perfect working condition. His duty is discharged when he furnishes a machine or appliance which is reasonably safe and suitable. I am therefore of opinion that the evidence was insufficient to support the charge of negligence.

Assuming that a defect existed which could have been avoided and remedied, it is clear that Pitkin could not have reached the lever and stopped the machine in time to avoid the accident. If the rollers were 2 feet in diameter and revolved 15 times a minute, as appears by positive evidence in the case, the felt was moving at the rate of 90 feet a minute, or 18 inches in two-thirds of a second. Under such circumstances it would be preposterous to say that the jury might have found that a sufficient time intervened between the commencement and the full consummation of the injury to stop the movement of the rollers, if it could have been done by the lever.

I think the learned justice did not err in granting the nonsuit, and for that reason the judgment should be affirmed with costs. All concur; COCHRAN, J., in result.